UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNETTE C., | ) |
| Plaintiff, | ) No. 18-cv-7482 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration[1], | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lynette C.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[3] As detailed below, the Court grants Plaintiff's motion for summary judgment [dkt. 15], denies the Commissioner's motion for summary judgment [dkt. 23], and remands this matter for further proceedings.

**I. Background**

    **a. Procedural History**

Plaintiff applied for Disability Insurance Benefits on October 17, 2012, alleging a disability onset date of July 1, 2010, which she later amended to January 24, 2012. [R. 116, 226]. On April 21, 2015, after an administrative hearing, Administrative Law Judge ("ALJ") Edward P. Studzinski issued an unfavorable decision. [R 23-40.] Plaintiff requested Appeals Council review, which was denied on

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of his last name(s).

[3] Plaintiff has filed a Brief in Support of Reversing the Decision of the Commissioner of Social Security, which the Court construes as a motion for summary judgment [15]; while the Commissioner has filed a response to Plaintiff's Motion for Summary Judgment [dkt. 23], the Court also construes this as a motion for summary judgment as the Commissioner prays for this relief in his *ad damnum* paragraph.

October 21, 2016. [R. 1-4.] On December 20, 2016, Plaintiff filed an action in the Northern District of Illinois (Case No. 16-cv-11504), and on September 25, 2017, Magistrate Judge M. David Weisman found in favor of the Plaintiff and remanded the case for a new hearing and decision.[4] [R. 896-913.] Consequently, the Appeals Council remanded the case on December 18, 2017. [R. 919-22.] On April 11, 2018, Plaintiff again appeared with counsel and testified at a second hearing before ALJ Studzinski. [R. 825-867.] A vocational expert ("VE") also testified, as well as a witness for Plaintiff. *Id.* On July 26, 2018, ALJ Studzinski issued another unfavorable decision, again determining that Plaintiff was not disabled. [R. 795-821.] On July 31, 2018, the Appeals Council issued a decision affirming the ALJ's July 26, 2018 decision. [R. 795-97.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff filed the instant action on November 12, 2018, seeking review of the Commissioner's most recent decision. [Dkt. 1.]

    b.    **Relevant Medical Background**

Plaintiff was born in 1963 and was 48 years old on her amended alleged disability onset date. [R. 227.] Plaintiff is a registered nurse, and throughout her work life has worked in that capacity, as well as working as a nurse practitioner, and teaching nursing classes at Morton Junior College; Plaintiff alleges she worked until she became unable to because of her symptoms. [R. 50, 463.] What follows is an abbreviated version of Plaintiff's medical history.

In November 2009, Plaintiff reported to Dr. Kevin Reitsma, D.O. that she had been experiencing several months of burning left-sided pain. [R. 338.] Plaintiff was diagnosed with paresthesias, and by January 2010, the burning pain was lasting all day. [R. 338, 340.] Throughout 2010 and 2011 she saw specialists in neurology and rheumatology and was prescribed multiple medications, but found no significant relief. [R. 346-47, 350, 352, 356, 358, 360.] In late 2011 and early 2012, imaging

---

[4] Judge Weisman's ruling articulated that ALJ Studzinski's first opinion "fail[ed] to consider contrary medical evidence, and draws conclusions as to plaintiff's credibility based on the ALJ's misunderstanding as to the medical underpinning of plaintiff's claimed disability." [R. 912.]

2

showed degenerative cervical and lumbar spine changes, including bulging discs at C4-5, C5-6, and L5-S1; facet arthropathy at L1-L4, and L5-S1 causing bilateral neural foraminal narrowing at L5-S1; and a posterior annular tear at L5-S1. [R. 389, 395.] She also suffered insomnia and was prescribed Ambien, with varying benefit. [R. 352, 354, 356, 361.] Throughout 2012, Plaintiff continued to see Dr. Reitsma for burning pain and tingling, and insomnia [R. 363, 367-68, 370, 373.] In January 2012, Dr. Reitsma also diagnosed Plaintiff with skin dysesthesias and cervical disc herniations. [R. 363, 370, 373.]

In January 2012, Plaintiff began seeing Dr. Donald Roland, M.D., a pain specialist. [R. 410.] Plaintiff reported constant burning pain all over, including her back, legs, feet, neck, shoulders, arms, and hands; weakness; difficulty sleeping; and dizziness and falls. [R. 410, 422, 436, 448, 452.] In February 2012, an EMG demonstrated C6 and L5 radiculopathy. [R. 435.] Dr. Roland diagnosed Plaintiff with dysesthesias, lumbago, sciatica, persistent low back pain, lumbar radiculopathy, thoracic pain, cervicalgia, unspecified brachia neuritis, myopathy, and possible myofascial pain syndrome or fibromyalgia pain. [R. 411, 436, 444, 449, 453.]

In October 2012, Plaintiff was evaluated at Mayo Clinic by neurologist, Dr. Benn E. Smith, M.D. [R. 461.] Plaintiff let Dr. Smith know, *inter alia*, she had problems sleeping, had excessive daytime somnolence, and felt overwhelmed, tired, or fatigued. [R. 464.] Imaging of her thoracic spine demonstrated mild degenerative disc disease at T10-11 and T11-12, and a broad based disc bulge, at T11-12, minimally contouring the ventral thecal sac. [R. 733.] In her lumbar spine she had early changes of facet arthropathy at L1-2, L2-3, and L3-4; mild disc degeneration, a broad based disc bulge mildly narrowing the caudal aspect of the left neural foramen, and mild facet arthropathy, at L4-5; and at L5-S1, mild disc degeneration, a broad based disc bulge mildly narrowing the caudal aspects of the neural foramen, with posterior right annular tear, small disc protrusion, and mild bilateral facet arthropathy. *Id.* Her cervical spine demonstrated minimal central disc protrusions at C4-5 and C5-6. [R. 734.] Following an autonomic reflex screen and quantitative sensory testing, Dr. Smith assessed pure, or predominantly, small-fiber peripheral neuropathy. [R. 467.] Dr. Smith's next step was to try

3

to determine and treat the cause, but he noted that 50-75% of the time, no specific etiology is found. *Id.* In early 2013 Plaintiff reported that her Zanaflex prescription helped manage her pain, but made her tired; other medications failed to provide relief. [R. 499.] Dr. Reitsma then assessed small-fiber peripheral neuropathy, with neuropathic pain, and autonomic dysfunction. [R. 518.]

Plaintiff began treatment with Dr. Arpan Patel, M.D. at Premier Pain Specialists in January 2013. [R. 778.] During appointments through March 2015, she reported, *inter alia*, diffuse pain in her upper and lower extremities, abdomen, back, and chest; burning pain, which was worse with light touch; and trouble sleeping. [R. 778, 781, 783, 789.] Dr. Patel diagnosed Plaintiff with unspecified neuralgia, neuritis, and radiculitis; chronic pain syndrome; and thoracic spine pain [R. 779, 782, 783-84, 790.] He indicated Plaintiff was suffering from small fiber neuropathy, autonomic instability, and possibly sympathetically mediated pain involving mainly axial locations,[5] including the lumbar and thoracic spinal region and abdomen, of unknown etiology. *Id.* Dr. Patel opined there was a large component of both stress-induced and stress-mediated pain symptoms, and possibly somatoform disorder.[6] [R. 790.]

Plaintiff also saw internist Dr. Lance Wallace, M.D., beginning in November 2013. [R. 521-22.] Plaintiff reported burning pain, difficulty sleeping, and had pain to light touch of the stethoscope. [R. 521; 523.] Dr. Wallace diagnosed Plaintiff with small-fiber polyneuropathy, chronic burning pain,

---

[5] Sympathetically mediated pain, also known as complex regional pain syndrome ("CRPS") is a type of neuropathic pain of unknown cause, but associated with severe, debilitating pain which can be so intense that even the lightest touch can be excruciating. American Society of Regional Anesthesia and Pain Medicine, "Types of Chronic Pain," https://www.asra.com/page/45/types-of-chronic-pain (visited October 16, 2019).

[6] A somatoform disorder is "a group of disorders in which physical symptoms suggesting physical disorders for which there are no demonstrable organic findings or known physiologic mechanisms, and for which there is positive evidence, or a strong presumption that the symptoms are linked to psychological factors." Somatoform Disorder, *Stedman's Medical Dictionary*, 260650. A somatoform disorder can, in itself, be a disabling disorder. *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001) (citing *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989)); *see also*, (Title Redacted by Agency), Bd. Vet. App. 1332194, 2013 WL 6573207 (Oct. 17, 2013) (relying on medical testimony that "there is a close interrelationship between the portions of the brain (limbic system) responsible for processing pain and emotions. Moreover, the same neurotransmitters (serotonin and norepinephrine) are involved in regulation of mood and transmission of pain sensation. When pain is severe and chronic…it leads to changes in the functioning of the brain. This results in a cycle in which pain worsens depression, which in turn worsens the sensation of pain.") (signals omitted).

neuralgia, radiculopathy, insomnia, and seizure. [R. 521, 523-24, 739.]

Plaintiff continued to display many of the same symptoms following her date last insured. During appointments at Pain Specialists from April 2015 through February 2018 (the latest date for which we have records), Plaintiff had, *inter alia*, continued pain under her breast, radiating to her flank, her left side, abdomen, upper back, thoracic spine/mid back, lower back, and feet. [R. 792, 1098, 1542, 1546, 1550, 1554, 1557, 1560, 1563, 1566, 1569, 1572, 1575, 1578, 1581, 1584, 1587, 1590, 1592-93, 1596, 1599, 1603, 1607, 1610, 1613, 1616.] She also had continued complaints of difficulty sleeping, which caused her to feel groggy during the day. [R. 792, 1590, 1593, 1603.] Plaintiff was diagnosed with unspecified neuralgia and neuritis, fibromyalgia, chronic pain syndrome, thoracic spine pain, low back pain, uncomplicated opioid dependence, depression, small fiber neuropathy, autonomic instability, and possible sympathetically mediated pain (unsure etiology, involving mainly the thoracic and lumbar region and abdomen). [R. 793, 1098-1100, 1543, 1547, 1551, 1555, 1558, 1561, 1564, 1567, 1570, 1573, 1576, 1579, 1581-82, 1584-85, 1588, 1591, 1594, 1597, 1600, 1604, 1608, 1610-11, 1614, 1616-17.] A large component of pain was attributed to stress, and possibility some symptoms due to somatoform disorder. *Id.*

    c.    **The ALJ's Decision**

On July 31, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 798-814.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 24, 2012 through her date last insured of March 31, 2015. [R. 800.] At Step Two, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the spine; peripheral neuropathy; adrenal mass; and a pain disorder variously attributed to fibromyalgia and small fiber neuropathy. [R. 800-01.] The ALJ did not find any nonsevere impairments. At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 801-802.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[7] to perform work with the following limitations: she may lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; she should not use ladders, ropes or scaffolds; she should not walk on uneven, wet, slippery, or vibrating surfaces; she is limited to working in non-hazardous environments; she should not have frequent verbal communication or telephone communication; she is "limited to simple, routine and repetitive tasks, work involving more [sic] than simple decision-making, more [sic] than occasional and minor changes in the work setting, and work requiring the exercise of more [sic] than simple judgment;"[8] she is precluded from work involving direct public service, although brief and superficial interaction with the public incidental to her primary job duties would be allowed; and she can tolerate brief and superficial interaction with co-workers and supervisors, but should not perform team or tandem tasks. [R. 802.] There were no limitations in her ability to sit, stand, or walk throughout an 8 hour workday. *Id.*

At Step Four, the ALJ determined that Plaintiff was not capable of performing her past relevant work as a nurse practitioner (DOT# 075.264-010, light, skilled); home health nurse (DOT# 079.374-014, medium per DOT, light as performed, skilled); or nurse instructor (DOT# 075.124-018 light, skilled). [R. 812.] At Step Five, however, the ALJ found that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. [R. 813.] The ALJ found that if Plaintiff were limited to light work, she could perform the job of assembler (DOT #706.684-022), and that if she were limited to sedentary work she could also perform the jobs of bench packager (DOT# 715.684-026) and sorter (DOT# 669.687-014) *Id.* Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 814.]

---

[7] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

[8] Due to the ALJ's limitation to simple, routine, and repetitive tasks, the Court presumes that the "more than" phraseology here is a typo, and presumes the ALJ meant "no more than."

6

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or, in this case, the combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. S.S.R. 96-8p, 1996 WL 374184, *5 (July 2, 1996). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists

when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Plaintiff alleges several problems with the ALJ's opinion. Among them, Plaintiff alleges the ALJ failed to consider the combined effect of certain of Plaintiff's impairments, and that the ALJ's analysis is therefore not supported by substantial evidence. We agree.

A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Scheck*, 357 F.3d at 699. "We have repeatedly stated, however, that an ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), as amended (Dec. 13, 2000) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992) (signals omitted)). Key to the instant analysis is the principle that an ALJ is required to consider the impairments both singly and in concert with one another when assessing a claimant's RFC. 20 C.F.R. §§ 404.1523 and 404.1545 ("we will consider the combined effect of all of your impairments..."); *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) ("[w]e keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination") (collecting cases). The Seventh Circuit has "frequently reminded the [Social Security] agency that an ALJ must consider the

combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citations omitted). "Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be totally disabling." *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir.2011).

In this case, Plaintiff argues that, contrary to established Social Security law, the ALJ failed to consider the combined effect of Plaintiff's depression, somatization, stress, and pain. Here, the record does not reflect that the ALJ considered the combined effect of these physical and mental impairments listed by Plaintiff. The entirety of the ALJ's statement on this point is his conclusion that "[n]one of the claimant's impairments (severe and/or nonsevere), considered alone or in combination, satisfy the c1iteria of any of the listings."[9] [R. 802.] Unfortunately, the ALJ failed to thoroughly explain his analysis (if there was any) on this point. While the ALJ discussed each of Claimant's impairments individually, he failed to consider and articulate the combined effect of all of her impairments, including a discussion about how, collectively, those impairments might in fact hinder her ability to function in a full time work setting. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (finding reversible error where ALJ discussed claimant's impairments individually, but did not articulate how back and leg pain and respiratory problems would affect her ability to work). By merely stating his conclusion, the ALJ prevents the Court from carrying out a meaningful review as to whether the ALJ's analysis of Plaintiff's combined impairments meets the substantial evidence standard. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96-8p.

In Plaintiff's case in particular, Plaintiff's pain specialist, Dr. Arpan Patel, M.D., indicated that a large component of Plaintiff's pain is stress related and possibly due to somatoform disorder. [R. 779; 793; 1099; 1543; 1547; 1551; 1555; 1558; 1561; 1564; 1567; 1570; 1573; 1576; 1579; 1582; 1585; 1588;

---

[9] As an initial matter, "an explicit analysis of the combined effects of those impairments, as opposed to just a general statement that all impairments were considered, is required." *Parker v. Berryhill*, 2017 WL 1232998, at *10 (N.D. Ill. Apr. 4, 2017).

1591; 1594; 1597; 1600; 1604; 1608; 1610; 1611; 1614; 1617.] He noted depression and anxiety increased Plaintiff's perception of pain. [R. 1100, 1567.] However, the ALJ did not discuss the combined impacts of somatization, depression, and anxiety in conjunction with Plaintiff's pain.

Additionally, the ALJ did not discuss the combined effect of Plaintiff's fatigue. While the ALJ did note that Plaintiff's doctors actually recommended Plaintiff increase her activities by starting a reconditioning program [R. 502, 805], the ALJ failed to explain to what extent he considered fatigue in conjunction with Plaintiff's pain and her other symptoms. This too is improper on this record that contains, among other things, evidence of the following: Plaintiff's reported difficulties sleeping at night [R. 89-90, 410, 422, 448, 452, 464, 520-21, 523, 778, 792, 1590, 1593, 1603]; Plaintiff feeling drowsy, fatigued, or needing to sleep for a couple hours during the day [R. 81, 464, 844, 1590]; and notations that Plaintiff's medications caused sedation. [R. 261; 463, 502, 848, 1599, 1607, 1610]. In fact, Plaintiff's doctor even noted that she had some "unacceptable side effects like dizziness, wooziness, and tiredness." [R. 502]. Without a discussion of the combined effect of Plaintiff's fatigue (and related symptoms mentioned in this paragraph), the Court "has no idea what the ALJ thought about this evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). The fatigue issue is particularly concerning because "no employer is likely to hire a person who must stop working and lie down two or three times a day for an hour at a time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). This is undoubtedly compounded when you consider the combined impacts of Plaintiff's fatigue, somatization, depression, and anxiety, and pain. The ALJ must address this issue in order to build the requisite "logical bridge" between the evidence and his conclusion.

Because the record does not indicate the ALJ properly considered the aggregate effect of all Plaintiff's ailments, we believe a redetermination of a multiple impairments analysis is necessary. Accordingly, a remand is warranted for thorough consideration of the combined effect of all of Plaintiff's impairments, both physical and mental, even those that are not severe in and of themselves, and how this affects her ability to work.

**IV. Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 15] is granted; the Commissioner's motion for summary judgment [dkt. 23] is denied.

Entered: 10/23/2019

_____
Susan E. Cox,
United States Magistrate Judge